IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *JUAN PAGAN, #M43947,* | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:15-cv-01121-MJR-SCW |
| | ) |
| *DR. SHAH,* | ) |
| | ) |
| Defendant. | ) |

### DR. VIPIN SHAH'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT ON THE MERITS

Defendant Dr. Vipin Shah, by and through his attorneys Sandberg Phoenix & von Gontard P.C. state the following for their Memorandum in Support of Motion for Summary Judgment on the Merits:

### INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Juan Pagan ("Plaintiff") is an inmate currently incarcerated at Illinois River Correctional Center and formerly was incarcerated at Robinson Correctional Center out of which his claims arise. Plaintiff brought this civil rights action for alleged deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff generally alleges he injured his left foot in August of 2014 and that Dr. Shah failed to provide proper medical care on that date and at subsequent visits to the Health Care Unit including a failure to refer Plaintiff to an orthopedic surgeon, a failure to request an MRI, and a failure to put Plaintiff on medical restriction. [Doc. 8, Amended Complaint].

1

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

  A.  **Parties**

1.  Plaintiff was an inmate of the IDOC and he was previously housed at Robinson CC during the relevant time period at issue in this suit from August 2014 through 2016.

2.  Dr. Vipin Shah is a medical doctor, and he, among other medical providers, provided medical care to Plaintiff at Robinson Correctional Center. *See Declaration of Dr. Vipin Shah* attached as Exhibit C.

  B.  **Plaintiff's Eighth Amendment Allegations**

1.  Plaintiff alleges that Defendant Dr. Shah was deliberately indifferent to Plaintiff's serious medical needs by failing to provide Plaintiff with necessary medical care. *See* Doc. 8.

2.  In particular, Plaintiff alleges Dr. Shah was deliberately indifferent for refusing to send Plaintiff to an orthopedic doctor, for refusing to provide Plaintiff an MRI, for failing to give Plaintiff a medical restriction, and for not talking to Plaintiff about his foot injury. [Exhibit B, Affidavit of Juan Pagan, at 89:2-24; 90:1-24; 91:1-7.]

3.  Plaintiff disagrees with the medical treatment he received. *Id*.

4.  Plaintiff has no medical training or certification. [Exhibit B, 7:12-24].

  C.  **Plaintiff's Care and Treatment at Southwestern Illinois Correctional Center**

1.  On August 28, 2014, Plaintiff injured his left foot playing basketball at Robinson CC. [Doc. 8 at p. 5; *See also* Plaintiff's Medical Records, attached as Exhibit A at PNKCC 55]

2.  Plaintiff was treated in the health care unit approximately thirty to forty-five minutes after the injury. [*See* Deposition of Juan Pagan, attached as Exhibit B at 27:11-24]. At the Health Care Unit, Plaintiff was treated by a nurse. [Exhibit A at PNKCC 55; Exhibit C at p. 2]. An elastic bandage (Ace wrap) was placed on Plaintiff's foot to stabilize swelling, Tylenol

9930905.1

325 mg was provided for pain management, crutches were provided, and Plaintiff was educated to keep the foot elevated, and to follow-up for medical treatment. *Id*.

  3. On August 31, 2014, Plaintiff was seen again by a nurse who indicated Plaintiff reported stabbing pain in his left foot; the foot was bruising, mildly swollen, and warm to the touch, and displayed decreased range of motion. [Exhibit A at PNKCC 57; Exhibit C at p. 2]. The Ace wrap, cold packs, crutches, and elevation were continued for management of swelling, pain medication was continued for pain management, and the Plaintiff was referred to the physician. *Id*.

  4. A physician's note from August 31, 2014 indicates a left ankle sprain and foot contusion was suspected. [Exhibit A at PNKCC 57; Exhibit C at p. 2]. The Plaintiff was given a treatment plan that included continued use of the Ace wrap, Motrin 600 mg for pain, Plaintiff was instructed to keep the foot elevated, and Plaintiff was requested for a follow-up after approximately one week. *Id*.

  5. On September 11, 2014, Plaintiff was seen in a follow-up appointment and appears to have stated his ankle pain was much better. [Exhibit A at PNKCC 58; Exhibit C at p. 2]. The records note the swelling had improved, but discoloration was noted on the Plaintiff's foot. *Id*. The Plaintiff was given a treatment plain that included continued use of Ace wrap, leg elevation, stretching and exercise, Motrin 600 mg for pain management, and a follow-up request after approximately two-weeks. X-rays also were ordered. *Id*.

  6. X-rays of Plaintiff's left foot and left ankle were completed on September 12, 2014. (Exhibit A at PNKCC 59).

  7. On September 19, 2014, Plaintiff was seen in a follow-up appointment. [Exhibit A at PNKCC 59-60; Exhibit C at p. 3]. Plaintiff denied needing crutches, but asked for

stronger Ibuprofen. *Id*. There was no swelling, but tenderness was noted on the Plaintiff's foot. *Id*. There is a note in the records the x-ray was negative for fracture. *Id*. The Plaintiff's treatment plan was continued, including an increased prescription of Ibuprofen 800 mg for at least 10 days, and the records note the x-rays were ordered to be sent to an outside radiology group for review. *Id*.

8. On September 24, 2014, Dr. Yousef from OneRadiology in Normal, Illinois, reviewed the September 12, 2014 x-rays. [Exhibit A at PNKCC 154; Exhibit C at p. 3]. Dr. Yousef determined there was a minor degree of degenerative change and a non-displaced fracture of the proximal end of the 2nd metatarsal, and follow-up examination of the left foot was recommended. *Id*.

9. On September 25, 2014, Plaintiff was seen in a follow-up appointment for a suspected foot sprain. [Exhibit A at PNKCC 61; Exhibit C at p. 3]. No swelling was noted, but the records reflect mild tenderness on the left foot. *Id*. Plaintiff's treatment plan was continued, including use of Motrin, Ace wrap, limitations on exercise, and a follow-up appointment after approximately two-weeks. *Id*.

10. The medical records next show an entry from October 2, 2014 that recognizes Dr. Yousef's conclusion of a non-displaced fracture at the proximal end of the 2nd metatarsal. [Exhibit A at PNKCC 61; Exhibit C at p. 3-4]. The records show Plaintiff was put in a rehabilitation boot at this time. *Id*.

11. The medical records indicate Dr. Shah saw Plaintiff in a follow-up appointment on October 11, 2014. [Exhibit A at PNKCC 62; Exhibit C at p. 4]. On that date, the Plaintiff showed minimal swelling and was using a rehabilitation boot to stabilize the foot. *Id*. Dr. Shah continued the Plaintiff's treatment plan, including the use of the rehabilitation boot, prescribed

Ibuprofen 400 for 30 days as needed for pain treatment, requested a follow-up x-ray, and requested Plaintiff for a follow-up after approximately one month. *Id*.

12. A follow-up x-ray was completed October 24, 2014. The x-ray was reviewed by Dr. Austin of OneRadiology on October 28, 2014. [Exhibit A at PNKCC 155; Exhibit C at p. 4]. Dr. Austin compared the October 24 x-rays with the September 12 x-rays, and concluded there was no acute fracture, dislocation, or aggressive appearing osseous destruction in Plaintiff's foot. *Id*.

13. The medical records indicate Dr. Shah saw Plaintiff for a follow-up appointment on November 8, 2014, to follow-up on his left-foot. [Exhibit A at PNKCC 64; Exhibit C at p. 4]. The Plaintiff continued to use a rehabilitation boot but complained of foot pain. Dr. Shah's note indicated the x-rays were negative for fracture. *Id*. Dr. Shah continued Plaintiff's treatment plan, including the use of the rehabilitation boot, increased Plaintiff's prescription for Ibuprofen 600 for 30 days as needed for pain treatment, and ordered a follow-up appointment. *Id*.

14. The medical records indicate Dr. Shah saw Plaintiff for a follow-up appointment on December 6, 2014, to follow-up on his left-foot. [Exhibit A at PNKCC66-67; Exhibit C at p. 5]. Dr. Shah requested a repeat x-ray to rule out fracture or another injury, and continued the Plaintiff's treatment plan, including ibuprofen and exercise to manage pain and swelling. *Id*. The follow-up x-ray was completed December 8, 2016. *Id*.

15. On December 10, 2014, Dr. Yousef at OneRadiology examined the December 8 x-rays and determined there was mild osteoarthritis at multiple levels, but there was no acute bony fracture or dislocation, and there was overall no significant change. [Exhibit A at PNKCC 156; Exhibit C at p. 5].

5

16. Degenerative conditions like arthritis can be caused by trauma such as sprains and broken bones. [Exhibit C at p. 5]. Degenerative conditions are typically treated with over the counter pain medications like Tylenol or Ibuprofen for pain management and physical therapy exercises and stretching to promote strength and stability. *Id*.

17. The medical records indicate Plaintiff saw a nurse on February 21, 2015, complaining of bone pain and requesting an MRI. [Exhibit A at PNKCC 71; Exhibit C at p. 5-6]. Plaintiff indicated pain on the top of his foot that precipitated with walking. *Id*. The nurse provided ibuprofen for pain management, instructed Plaintiff on the importance of avoiding sports and certain activities, instructed on proper body mechanics and using hot/cold packs, and referred Plaintiff to the physician. *Id*.

18. The medical records indicate Plaintiff saw a different physician on February 23, 2015 to follow-up with his left-foot pain. [Exhibit A at PNKCC 72; Exhibit C at p. 6]. The medical records note the physician reviewed Plaintiff's physical therapy, Plaintiffs use of rehabilitation boots, and the difference in pain between walking and resting. *Id*. Plaintiff also appears to have had a right foot injury on that date. *Id*. The physician provided Ibuprofen 200 to take as needed for ten days, reviewed the x-rays, discussed physical therapy, and informed Plaintiff to follow-up as needed and to avoid jumping. *Id*.

19. The medical records indicate Plaintiff saw nurses with complaints of left-foot pain April 10, May 6, and May 15, 2015. [Exhibit A at PNKCC 74, 79, 83; Exhibit C at p. 6]. The nurses examined the Plaintiff's foot to determine its condition and swelling, prescribed either Ibuprofen or Acetaminophen for pain management at each appointment, and instructed the Plaintiff to follow-up as needed. *Id*. Plaintiff was referred to the physician following the May 15 appointment. *Id*.

9930905.1

20. The medical records indicate Plaintiff saw the physician on May 19, 2015. [Exhibit A at PNKCC 84; Exhibit C at p. 6]. Plaintiff described pain in his ankle that occurred when he tries to stretch and moved up his leg to his knee and thigh. *Id*. Plaintiff also indicated his lateral foot was discolored and he had been walking on the lateral aspect of his foot due to pain. *Id*. The physician noted no discoloration and that the ankle was intact. *Id*. Plaintiff was educated on physical therapy techniques and told to follow up as needed with pain. *Id*.

21. The medical records indicate Plaintiff did not complain about left foot pain again until May 13, 2016. [Exhibit A at PNKCC 225; Exhibit C at p. 7]. On that date, Plaintiff saw the Dr. Shah and complained of the injury from September of 2014. *Id*. Dr. Shah examined the Plaintiff's foot, and noted Plaintiff's vitals, movement, and sensation were normal. *Id.* Dr. Shah prescribed Ibuprofen 400 (30 per month for 6 months) and told Plaintiff to continue elevating the foot and exercising to control swelling and strengthen the foot. *Id*.

22. Plaintiff does not appear to have had any additional treatments related to his left foot while at Robinson CC following the May 13, 2016 appointment. [Exhibit C at p. 7].

23. Dr. Shah determined a referral to an outside orthopedic surgeon was not medically necessary because Plaintiff's fracture appears to have healed. [Exhibit C at p. 7].

24. Dr. Shah determined an MRI was not medically necessary because the x-ray revealed mild degenerative changes, including mild osteoarthritis, which likely explains Plaintiff's discomfort and can be treated with over the counter anti-inflammatories and pain medication as needed and stretching/exercise for strength and support. [Exhibit C at p. 7].

## STANDARD FOR SUMMARY JUDGMENT

A Court should grant summary judgment if the pleadings, discovery documents and affidavits "show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of producing "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Carett*, 477 U.S. 317, 323 (1986). The moving party may meet their burden by "showing…an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has satisfied their burden, the non-moving party must plead specific facts to show a genuine issue exists. Fed.R.Civ.P. 56; *Anderson*, 477 U.S. at 250. Disputes that would not affect the outcome of the suit will not satisfy the requirement to show a genuine issue of material fact exists. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996). If the plaintiff does not show evidence exists that would reasonably allow a fact-finder to decide in the plaintiff's favor on a material issue, the court must enter summary judgment against the plaintiff. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## APPLICABLE CASE LAW

In order to establish a cause of action under 42 U.S.C. §1983, a plaintiff must establish (1) a defendant was deliberately indifferent; (2) to a serious medical need; and (3) substantial harm resulted from any such indifference. *Thomas v. Walton*, 461 F.Supp 2d 786, 793 (S.D. Ill. 2006); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). In order to prevail on a claim for deliberate indifference, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greano v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). "Deliberate indifference

implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Thomas*, 461F.Supp 2d at 793, citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985). The Seventh Circuit has noted that the standard for deliberate indifference is a high hurdle…because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821-822 (7th Cir. 2012), quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

"In determining whether a deprivation of medical care amounts to deliberate indifference, a court should consider such factors as the severity of the medical problem, the potential for harm if medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Thomas*, 461 F.Supp 2d at 793. A court examines the totality of care an inmate received to determine whether prison officials have been deliberately indifferent to the inmate's serious medical needs, and the decisive factor is whether the inmate was injured. *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). In the context of medical professionals, negligence, or even gross negligence, does not equate to deliberate indifference. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Johnson*, 433 F.3d at 1012-13. "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Roe*, 631 F.3d at 857 (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Thomas v. Walton*, 461 F.Supp 2d 786, 793 (S.D. Ill. 2006). Deliberate indifference may be inferred based upon a medical professional's decision only when the decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment. *Id.* (citing

9

*Cole v. Fromm, et al.*, 93 F.3d 254 (7th Cir. 1996)). A difference of opinions as to how to treat a medical condition does not give rise to a deliberate indifference claim. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). A prisoner's dissatisfaction with a physician's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *Johnson v. Doughty, et al.*, 433 F.3d 1001, 1012-1013 (7th. Cir. 2006). The Eighth Amendment does not require that prisoners receive "unqualified access to health care;" rather, they are entitled to only "adequate medical care." *Johnson v. Doughty,* 433 F.3d at 1013. Put another way, a prisoner is entitled only to reasonable measures to meet a substantial risk of serious harm — not to demand specific care or to receive the best care possible. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). "A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001).

**ARGUMENT**

### A. Disagreeing With a Medical Diagnosis – Even One that is Potentially in Error – Is Insufficient to Create a Claim for Deliberate Indifference

Plaintiff's claims against Dr. Shah – that Dr. Shah was wrong to not an MRI or refer Plaintiff to an outside orthopedic surgeon – creates the classic example of a patient disagreeing with his or her doctor, which does not support an actionable claim for deliberate indifference under Section 1983. *See Proctor v. Sood*, et al., 863 F.3d 563, 567-68 (7th Cir. July 13, 2017) (finding medical defendants did not show deliberate indifference by failing to refer plaintiff to an outside colon specialist after numerous advanced tests showed no signs of significant colon complications despite the plaintiff's suggestion he suffered from a panoply of conditions); *Cesal v. Motas*, 851 F.3d 714, 722 (7th Cir. 2017)("mere disagreement with a doctor's medical

10

judgment is not enough to support an Eight Amendment violation"). Even a disagreement between doctors as to the appropriate choice of medical care cannot create a deliberate indifference claim. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)("disagreement . . . between two medical professionals about the proper course of treatment generally is insufficient, by itself, to establish an Eight Amendment violation"). Rather, Plaintiff must "present enough [evidence] to raise a genuine issue of material fact" and, in doing so, Plaintiff must "show that the defendant acted or failed to act in a way that disregarded an excessive risk of harm to the inmate." *Cesal*, 851 F.3d at 722. Plaintiff cannot meet this burden.

The Seventh Circuit's recent decisions in *Proctor* and *Jordan* are applicable here. *See Proctor*, 863 F.3d at 567-68; *Jordan v. Milwaukee County*, 680 Fed. Appx.479, 2017 WL 778365 (7th Cir. Feb. 27, 2017). In *Proctor*, the Seventh Circuit upheld summary judgment against a prisoner claiming medical providers were deliberately indifferent by failing to request colonoscopy or endoscopy to diagnose his chronic and ongoing abdominal cramping. *Protcor*, 863 F.3d at 565-67. There, plaintiff experienced abdominal cramping, constipation, and excessive gas from 2007 through 2014. *Id*. Medical providers at Menard CC performed a series of tests, examinations, x-rays, and different medications as forms of treatment. *Id*. The plaintiff insisted he receive a colonoscopy or endoscopy to better diagnose his condition. *Id*. Plaintiff's medical providers, including the medical director, repeatedly denied Plaintiff's requests for these additional diagnostic treatments. *Id*. at 566. Plaintiff later filed a lawsuit claiming medical providers were deliberately indifferent because they failed to order a colonoscopy or endoscopy and failed to diagnose his condition with certainty. *Id*.

The Seventh Circuit agreed the medical providers were not deliberately indifferent because the evidence showed the plaintiff's symptoms were investigated thoroughly and medical

11

providers routinely performed physical exams, ordered x-rays, and conducted other tests. *Id.* at 567-68. The Seventh Circuit reaffirmed the "decision whether further diagnostic testing – like colonoscopy – was necessary is 'a classic example of a matter for medical judgment'." *Id.* at 568; *Citing Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Further, the plaintiff failed to provide any evidence the treatment he received departed from accepted medical judgment, practice, or standards. *Id.*; *quoting Pyles*, 771 at 411. Therefore, there was no evidence of deliberate indifference and summary judgment was proper.

In *Jordan*, plaintiff took issue with a nurse practitioner who refused to immediately prescribe plaintiff an asthma inhaler and pain medication. *Jordan*, 2017 WL 778365 at *1-2. Even though both the inhaler and medication were subsequently prescribed by a doctor who saw plaintiff, the fact that this doctor differed in his choice of treatment did not suggest the nurse practitioner substantially departed from accepted professional judgment, and the court noted plaintiff could not show sufficient evidence that might lead a jury to believe the nurse practitioner's course of treatment was not based on accepted medical judgment. *Id.* at *3.

Similarly, in *Whiting*, the Seventh Circuit found a prison doctor was not deliberately indifferent to a plaintiff, who presented with pain and nodules in his ear and jaw, when the doctor elected to postpone ordering a biopsy of the nodules in favor of treating plaintiff with antibiotics for a two-month period. *See Whiting v. Wexford Health Sources, Inc.* 839 F.3d 658, 663 (7th Cir. 2016) The Seventh Circuit found that, because the doctor believed plaintiff had an infection rather than lymphoma there was no inference or suggestion that the doctor "knew better" than to pursue the course of treatment that he did. *Id.*

Here, Plaintiff's demands for an MRI or referral to an outside orthopedic provider are fundamentally demands for specific medical treatment that is left to the medical provider's

12

discretion. Plaintiff is not entitled to unqualified access to medical treatment including a demand for an MRI or orthopedic surgeon's referral; rather, he is entitled to adequate medical treatment. *Johnson v. Doughty,* 433 F.3d at 1013. Here, the Plaintiff's disagreement with the course of treatment to not provide an MRI or send Plaintiff to an orthopedic surgeon does not satisfy the Plaintiff's burden to show deliberate indifference. Further, the fact Plaintiff was provided crutches and rehabilitation boots instead of being placed on additional medical restrictions does not show Plaintiff's medical providers were indifferent to Plaintiff's medical needs, because Plaintiff is merely disputing the course of treatment decided by his medical providers (crutches and rehabilitation boots) over the course of treatment Plaintiff would prefer (medical restriction). Therefore, there is no evidence either Dr. Shah's opinions and treatment or the other medical provider's treatment was a departure from reasonable medical treatment for Plaintiff's condition and alleged injury.

**B. There is Not Evidence Dr. Shah or any Medical Provider were Deliberately Indifferent**

Even assuming Dr. Shah actually provided Plaintiff's medical treatment between August 28, 2014 and October 11, 2014, which there is no evidence other than Plaintiff's unsubstantiated claims to support, there is no evidence of deliberate indifference during that time period or any other. Here, the records show almost continual treatments and follow-ups to Plaintiff's injury between August 28 and October 11, which included use of an Ace wrap, crutches, pain medication, and instructions to keep Plaintiff's foot elevated. Even if Plaintiff were to argue a fracture was misdiagnosed based on the early readings of Plaintiff's x-rays (which Dr. Yousef's report later clarified on the request of Plaintiff's providers), misdiagnosis alone is not deliberate indifference. *See Whiting,* 839 F.3d at 662; *citing Estelle,* 429 U.S. at 106. The fact that medical

13

providers responded to Dr. Yousef's opinions by putting Plaintiff in a rehabilitation boot shows they were not deliberately indifferent to Plaintiff's medical needs.

Furthermore, Plaintiff's unsubstantiated claims none of his medical providers explained his diagnosis or discussed his treatments do not support his claim for deliberate indifference, because the undisputed evidence shows adequate treatment was provided throughout the Plaintiff's incarceration at Robinson. For example, it is undisputed Dr. Shah saw Plaintiff in October of 2014, requested multiple x-rays, prescribed pain medication, continued Plaintiff's use of a rehabilitation boot, and recommended Plaintiff continued to exercise to strengthen and support his foot. Dr. Shah's physical examinations revealed no swelling and a normal range of motion in Plaintiff's foot. Dr. Shah determined the proper course of treatment was for Plaintiff to continue his treatment plan, to continue exercising, and to continue taking Ibuprofen 400 as needed. There is no evidence this treatment was a departure from reasonable medical procedures related to degenerative conditions or prior fractures. Moreover, when the Plaintiff complained of foot pain between February and May of 2015, he received regular examinations and pain medication from nurses, and was referred to the physician where he was instructed on physical therapy techniques and told to follow-up as needed. The fact Plaintiff did not follow-up or complain of additional left-foot pain until May of 2016 certainly implies this treatment was effective, and there is no evidence any medical provider, including Dr. Shah, knowingly or recklessly refused to provide Plaintiff any necessary medical treatment. Therefore, Dr. Shah is entitled to summary judgment as a matter of law.

## CONCLUSION

Plaintiff alleges Dr. Shah was deliberately indifferent Plaintiff's medical needs by failing to provide proper medical care for Plaintiff's injured left-foot, including referral to an orthopedic

surgeon or requesting an MRI. The undisputed evidence shows neither Dr. Shah nor any medical provider at Robinson were deliberately indifferent to Plaintiff's medical needs, because Plaintiff was regularly examined, x-rays were requested, various amounts of pain medication were prescribed, and Plaintiff was provided appropriate treatment for his condition including use of crutches, rehabilitation boots, and stretching/exercise. The fact Plaintiff disagrees with the treatment he received does not support his claims of deliberate indifference, and summary judgment is proper as a matter of law.

WHEREFORE, for the reasons above and the reasons set forth above and in Defendant's Motion for Summary Judgment, Defendant respectfully requests this Court grant summary judgment in his favor, and for such further relief this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.


By:  */s/ Rodney M. Sharp*
     Rodney M. Sharp, #6191776
     Timothy R. Tevlin, #6324746
     600 Washington Avenue - 15th Floor
     St. Louis, MO  63101-1313
     314-231-3332
     314-241-7604 (Fax)
     rsharp@sandbergphoenix.com
     ttevlin@sandbergphoenix.com

     *Attorneys for Defendant Vipin Shah, M.D.*

## Certificate of Service

      I hereby certify that on 20th day of June 2018 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Matthew W. Kelly
SCHREMPF, KELLY & NAPP, LTD.
mkelly@sknlawyer.com
*Attorney for Plaintiff*

                                  */s/ Rodney M. Sharp*_____